UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

BRIAN STEWART,
   Plaintiff,

vs.                                                                 No. 08-1033

ROBERT EILER, et.al.,
   Defendants

**SUMMARY JUDGEMENT ORDER**

This cause is before the court for consideration of the defendants' motion for summary judgement. [d/e 81].

I. BACKGROUND

The pro se plaintiff filed his complaint pursuant to 42 U.S.C. §1983 claiming that his constitutional rights were violated at Pontiac Correctional Center. The plaintiff named 15 defendants including Correctional Officers Robert Eiler, Burton Gestner, Michael Melvin, James Blackard and Jeffery Malnar; Warden Eddie Jones; Assistant Wardens Joseph Mathy and Robert Griffin; Illinois Department of Corrections (herein IDOC) Director Roger Walker; IDOC Officer Brian Fairchild; IDOC Deputy Director Barbara Hunt; Investigations Officer Joseph Burk; Counselor Randall Flex and Internal Affairs Investigators Jack Libby and Karl Webber.

After merit review of the plaintiff's complaint, the court found the plaintiff had alleged the following claims:

   a) Each defendant failed to protect the plaintiff from assault by another inmate on October 20, 2006.
   b) Defendant Robert Eiler was deliberately indifferent to the plaintiff's serious medical condition on October 20, 2006.
   c) Defendants Burton Gestner and Robert Eiler conspired to allow the other inmate to assault the plaintiff on October 20, 2006.
   d) Defendants Brian Fairchild and Roger Walker conspired to conceal inmate violence by refusing to respond to the plaintiff's claims that he was in danger.
   e) Defendants Roger Walker and Eddie Jones failed to properly train correctional officers which lead to the assault against the plaintiff.

The first four claims are against the defendants in their individual capacities only. The final claim against Defendants Walker and Jones is an official capacity claim. *See* February 26, 2008 Court Order, June 6, 2008 Court Order.

The defendants originally filed their motion for summary judgement on June 2, 2009. On June 8, 2009, the court entered an order that dealt with more than twenty motions to compel filed by the plaintiff. *See* June 8, 2009 Court Order. Since the motions were granted in part and denied in part, discovery was briefly extended and the plaintiff was given additional time to file a response to the pending dispositive motion.

On August 6, 2009, the plaintiff filed a motion asking for additional time to file his response which was granted by the court. *See* [d/e 88]; October 5, 2009 Text Order. The plaintiff was ordered to provide his response on or before October 26, 2009. The plaintiff was also admonished that "[d]ue to the length of time since the dispositive motion was filed, no further continuances will be allowed." October 5, 2009 Text Order. No further motions or documents or responses have been filed by the plaintiff.

## II. DEFENDANT JOSEPH BURKE

The court notes that on June 19, 2009, the defendants filed a Suggestion of Death regarding Defendant Joseph Burke. Because the plaintiff is proceeding pro se, the court asked the defendants to inform the court whether a personal representative had been appointed for Defendant Burke. The defendants were ordered to provide the information on or before June 30, 2009 and the defendants complied with that order. *See* June 19, 2009 Court Order: June 19, 2009 Amended Suggestion of Death.

The plaintiff was also informed that once this information was provided, he had 90 days to name a substitute defendant pursuant to Federal Rule of Civil Procedure 25(a)(1). June 19, 2009 Court Order. The plaintiff has taken no further action. Therefore, the court will dismiss Defendant Burke.

## III. FACTS

Since the plaintiff failed to file a response to the pending summary judgement motion, the following undisputed facts are taken from the defendants' motion and exhibits:

Defendant Eiler says he is a Correctional Officer at Pontiac Correctional Center. Defendant Eiler says on the morning of October 20, 2006, he and Officer Gestner were assisting each other in escorting inmates to the showers. (Def. Memo, Eiler Aff., p. 1) Officer Gestner was on his lunch break when the defendant got to the plaintiff's cell. The defendant says when he was assisting the plaintiff, the plaintiff began to walk faster than the officer and stopped in front of Inmate Capshaw's cell. Defendant Eiler says the plaintiff then asked him if he had seen Inmate Capshaw "pay him." (Def. Memo, Eiler Aff., p. 1-2). Defendant Eiler says he saw no contact between the plaintiff and Inmate Capshaw and when he walked past the cell, he saw Inmate Capshaw sitting on his bed. (Def. Memo, Eiler Aff., p. 2).

The defendant says as he locked the plaintiff in the shower cell, the plaintiff asked the defendant if he saw a red mark on his face. Defendant Eiler says he told the plaintiff there was

2

no mark. The plaintiff then asked for Magic Shave and to see Officer Gestner. The officer said he got the Magic Shave and gave it to the plaintiff. (Def. Memo, Eiler Aff., p. 2)

Defendant Eiler says the plaintiff never complained to him about being afraid for his life or that he was having trouble with anyone. In addition, Defendant Eiler says the plaintiff did not request medical care nor did the defendant see any injuries on the plaintiff. (Def. Memo, Eiler Aff., p. 2).

Defendant Gestner says he is a Correctional Officer at Pontiac Correctional Center. The defendant agrees that on October 20, 2006, he was escorting inmates to the showers. When he returned from his lunch break, he stopped by the plaintiff's cell. The plaintiff stated that he needed medical attention because he had been assaulted by Inmate Capshaw on his way to the showers. (Def. Mot., Gest. Aff, p. 1). Gestner says he observed a dime-sized red mark on the plaintiff's left cheek, and no other injuries. Nonetheless, Gestner says he notified Lieutenant Blackard who notified a medical technician. The medical technician evaluated the plaintiff and the plaintiff was then escorted to the Health Care Unit. (Def. Mot., Gest. Aff, p. 2.) Defendant Gestner says the plaintiff never complained to him about any fears for his safety.

Defendant Blackard says at the relevant time frame of the plaintiff's complaint, he was a Lieutenant at Pontiac Correctional Center. On October 20, 2006, he was called by Defendant Gestner to see the plaintiff. He observed a red patch on the plaintiff's left cheek. The plaintiff stated that Inmate Capshaw "stole on me." (Def. Mot, Black. Aff, p. 1) Blackard says he spoke with Inmate Capshaw who denied the incident and Defendant Eiler who did not see it. The plaintiff was still seen by a medical technician and medical staff.

The medical records indicate the plaintiff was seen by Nurse Freel who observed a reddened area on the plaintiff's left cheek. She cleaned the area, applied antibiotic ointment and gave Motrin to the plaintiff. No other injuries were noted and there was no mention of any blood in the medical report. (Def. Memo, Med. Records, Ex. O).

Defendant Karl Webber says he is a Correctional Officer who has been assigned to the Internal Affairs Unit at Pontiac Correctional Center and investigates allegations of wrong-doing. (Def. Memo, Webber Aff, p. 1). Defendant Webber says he investigated the plaintiff's claim that he was assaulted by Inmate Capshaw on October 20, 2006. The plaintiff alleged that while he was escorted to the shower, Inmate Capshaw reached through the bars and hit him in the face. Defendant Webber says he interviewed Officer Eiler, Inmate Capshaw and two other inmates during his investigation. Webber says he discovered that the plaintiff and Inmate Capshaw had exchanged words the day before the incident and the plaintiff threatened to set up Inmate Capshaw for an assault ticket. Other inmates heard the plaintiff while he was in the shower stating that he was putting Magic Shave on his face and was scrubbing his face with a towel. (Def. Memo, Webber Aff, p. 2)

Defendant Webber says inmates use Magic Shave to get rid of whiskers without a razor. However, Webber says if it is left on for a few minutes it will burn, particularly if it is rubbed

3

with a towel.  Therefore, some inmates use it to make it appear that they have been struck. (Def. Memo, Webber Aff, p. 2)

Defendant Webber says because Inmate Capshaw denied hitting the plaintiff, other inmates heard the plaintiff claim he was going to set up Inmate Capshaw and Officer Eiler did not see an assault, the plaintiff's claims were found to be unsubstantiated and without merit. (Def. Memo, Webber Aff, p. 3).

Defendant Barbara Hurt says she is the Deputy Director of the Illinois Department of Corrections and has no involvement in the day-to-day operations of the prisons. (Def. Memo, Hurt Aff, p. 1)   She says in the summer and fall of 2006, the Governor's office forwarded two letters to her office from the plaintiff.   The plaintiff stated he was concerned for his safety at Pontiac.   Defendant Hurt says her office forwarded those letters to Pontiac Correctional Center for investigation by the Internal Affairs Unit.  A letter was sent to the plaintiff informing him of this action and telling him that he would be notified in writing of the results of the investigation. (Def. Memo, Hurt Aff, p. 1)

In September of 2006, Defendant Webber says the Internal Affairs Unit received a letter from the plaintiff that had been forwarded to them by the Governor's office.   The plaintiff said his life was in danger.   On February 17, 2006, Defendant Webber spoke with the plaintiff who told him that he was afraid he would be killed by members of three gangs: the Gangster Disciples, the Conservative Vice Lords and the Latin Folks.   He stated that three specific inmates- Forrest, Carter and Reeves- were trying to kill him.

Documents submitted by the defendants indicate that the plaintiff had a history with these inmates.  On December 23, 2005, the plaintiff received a disciplinary ticket for an  extortion plot that involved the same inmates.   The plaintiff was found guilty of several counts including bribery and extortion.  After this event, the plaintiff began filing grievances stating he was afraid these inmates might kill him. (Def. Memo, Ex E, , Ex. F.)

Defendant Webber says he investigated the plaintiff's claim concerning his safety and found that it was without merit.  Nonetheless, as a precautionary measure, Inmates Forrest and Carter were added to the list of inmates who should be kept separate from the plaintiff.  Inmate Reeves had already been released.  (Def. Memo, Webber Aff, p. 1-2). Defendant Webber says he never received information that the plaintiff feared for his life due to threats made by Inmate Capshaw or the Traveling Vice Lords. (Def. Memo, Webber Aff, p. 3)

Defendant Jeffery Malner says he is also assigned to the Internal Affairs Unit and also interviewed the plaintiff concerning his fears for his safety.  Defendant Malner says the plaintiff named the same gangs and individuals that he identified to Defendant Webber, but did not mention Inmate Capshaw or the Traveling Vice Lords. (Def. Memo, Malnar Aff, p. 1).
Defendant Jack Libby says he was assigned to the Internal Affairs Unit, but was not involved in the investigation into the plaintiff's claims concerning his safety. (Def. Memo, Lib. Aff, p. 1).

Defendant Joseph Mathy says he was the Assistant Warden of Operations at Pontiac Correctional Center from March 2004 to March 2006. One of his responsibilities was supervising the Internal Affairs Unit. Mathy said he did not participate in investigations, but he did sign off on the incident reports on behalf of Warden Eddie Jones. (Def. Memo, Mathy Aff, p. 1). Mathy reviewed the reports and agreed with the Internal Affairs Unit investigation which found that the allegations were unsubstantiated and without merit. Mathy says he has no memory of the plaintiff in this case.

Defendant Randall Flex says he is a Correctional Counselor at Pontiac Correctional Center. Defendant Flex says inmates are required to attempt to resolve their complaints informally with their counselor before they are allowed to file a grievance. Defendant Flex says in the summer and fall of 2006, the plaintiff filed several grievances alleging that his life was in danger. (Def. Memo, Flex Aff, p. 1) The plaintiff has provide an overview of 11 grievances and has provided copies of those grievances. None of the grievances complain about Inmate Capshaw or the Traveling Vice Lords. (Def. Memo, Flex Aff, p. 3, Ex E-1 to E-12).

Defendant Jones says emergency grievances were sent to his office were reviewed by a member of his executive staff. That staff member would then report their findings to Defendant Jones and he would then check the appropriate response. (Def. Memo, Jones Aff., p. 2)

Defendant Jones says records reveal that on or about August 21, 2008, the plaintiff submitted a grievance stating that he was afraid that two specific inmates who were Gangster Disciplines were going to kill him. The defendant says he has no specific memory of the grievance, but procedure would dictate that his staff contact Internal Affairs for an investigation. Defendant Jones says as a result, the plaintiff's grievance was denied emergency status. (Def. Memo, Jones Aff., p. 3) The plaintiff then submitted this grievance and 11 others which were addressed as a group and denied. Defendant Jones says his designee, Pearlene Pitchford, signed his name to the grievance. The defendant says he has no other knowledge of the plaintiff's claims.

Defendant Brian Fairchild says he is the Chairperson of the Administrative Review Board (herein ARB) and his job includes reviewing and responding to inmate grievances. (Def. Memo, Fair. Aff, p. 1). Defendant Fairchild says on January 12, 2007, he received a packet of 12 grievances from the plaintiff that were handled as one group. The plaintiff's claims were reviewed and based on the information presented to the board, the grievances were denied. (Def. Memo, Fair. Aff, p. 1). The recommendation was reviewed and signed by Director Walker's designee, Terry Anderson.

On April 4, 2007, the plaintiff filed a grievance dated October 20, 2006, which alleged that Officers Eiler and Gestner conspired to allow the plaintiff to be assaulted. After review, the grievance was denied. This recommendation was also reviewed and signed by Director Walker's designee, Terry Anderson. (Def. Memo, Fair. Aff, p. 1)

5

Defendant Fairchild says the ARB received no grievances from the plaintiff concerning Inmate Capshaw or the Traveling Viced Lords. (Def. Memo, Fair. Aff, p. 1)

Defendant Eddie Jones says he is the Deputy Director of the Illinois Department of Corrections, but was the Warden at Pontiac Correctional Center from April 1, 2006 through May 26, 2008. The defendant says as Warden, he was responsible for the overall administration of the institution. Therefore, he routinely delegated the handling of grievances and inmate correspondence to his executive assistants or other designees. (Def. Memo, Jones Aff., p. 1-2).

Defendant Walker says he is the Director of the Illinois Department of Corrections and as such is responsible for the operation of 28 adult correctional centers as well as various work camps, boot camps and adult transitional centers. "Due to the large amount of correspondence directed to me as the Director, the responsibility for reviewing and addressing correspondence received by the Director's Office form offenders is delegated to subordinates." (Def.Memo, Walker Aff, p. 1)  In addition, the job of reviewing and addressing inmate grievances is the responsibility of the Office of Inmate Issues. Therefore any such inmate correspondence sent to the Director is forwarded to the appropriate office. (Def.Memo, Walker Aff, p. 1)

## IV. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56c. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in

6

observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## V.  ANALYSIS
A.  FAILURE TO PROTECT

The defendants argue the plaintiff cannot demonstrate that Defendants were deliberately indifferent to his fears for his safety. To establish a failure-to-protect claim, a prisoner must show that he has been incarcerated under conditions posed a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). A prison official is deliberately indifferent if he is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."*Id.* at 837. Only deliberate indifference will suffice to state a failure-to-protect claim; mere negligence is not sufficient. *Id.*

It is doubtful the plaintiff could demonstrate that he was assaulted by Inmate Capshaw based on the evidence before this court. However, if the court assumes the assault took place, the plaintiff has still provided no evidence the defendants were aware the plaintiff was in any danger from Defendant Capshaw prior to the October 20, 2006 incident. In his complaint, the plaintiff makes various claims that he sent letters to defendants with "certification of service" telling them about his fears for his safety. (Comp., p. 10). The plaintiff has chosen not to respond to the pending dispositive motion and has provided no evidence of those letters. In addition, the letters and grievances that are before this court make no reference to the inmate who was involved in the alleged assault.

Therefore, while the plaintiff did make numerous complaints concerning his fear of certain gangs and gang members, there is no evidence he ever complained about Inmate Capshaw or his gang, the Traveling Vice Lords. The motion for summary judgement on this claim is granted.

B.  DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL CONDITION.

Defendant Robert Eiler was argues that the plaintiff has failed to demonstrate that he was deliberately indifferent to a serious medical condition. The plaintiff must pass both an objective and a subjective test in order to establish that the defendant violated his Eighth Amendment rights. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). The first prong of the test requires the plaintiff to demonstrate that the alleged deprivation was sufficiently serious. *Id*.

The second prong of the test requires the plaintiff to show that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at

840-42) Inadequate medical treatment due to negligence or even gross negligence does not support a constitutional violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987). In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997). Deliberate indifference is "something approaching a total unconcern for [the plaintiffs'] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v Lane,* 959 F.2d 673, 677 (7th Cir. 1992).

The only evidence before this court is the plaintiff suffered from a small red abrasion on his cheek. This is not a serious medical condition. Even if the plaintiff could demonstrate he somehow suffered from a sufficeintly serious injury, he cannot demonstrate that Defendant EIler was deliberately indifferent. The plaintiff was seen by a medical technician after the assault and he was treated for his injury. There is no evidence of any delay in medical care or that this delay somehow had a detrimental impact on the plaintiff's condition. *Langston v Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996)("an inmate who complains that delay in medical treatment rose to constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."). The motion for summary judgement on the plaintiff's claim that Defendant Eiler was deliberately indifferent to his serious medical condition is granted.

C. CONSPIRACY

The plaintiff alleges that Defendants Gestner and Eiler conspired to allow the inmate attack and that Defendants Fairchild and Walker conspired to conceal inmate violence. To demonstrate a conspiracy, the plaintiff must demonstrate that the defendants 1) reached an agreement (express or implied) to deprive the plaintiff of constitutional rights; and 2) the plaintiff suffered "'actual deprivations of those rights in the form of overt acts in furtherance of the agreement.'" *Libra v. City of Litchfield*, 839 F. Supp. 1370, quoting *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988).

The only details of the plaintiff's conspiracy claims are in his complaint. For instance, the plaintiff claimed that Defendant Gestner left Defendant Eiler in charge of the shower duty so Defendant Eiler could hold the plaintiff in front of Inmate Capshaw's cell and allow the assault. There is no evidence before the court in support of this allegation. As previously stated, the plaintiff has failed to provide any evidence that either defendant was aware that Inmate Capshaw was a risk to the plaintiff.

As for Defendants Walker and Fairchild, the plaintiff claims these defendants conspired to conceal inmate violence by refusing to respond to the plaintiff's claims of danger. There is no evidence the plaintiff communicated his concerns about Inmate Capshaw to either defendant and his claims concerning his fear of other inmates was addressed by Internal Affairs. The plaintiff has presented no specific facts tending to show that a conspiracy existed to survive a summary judgment motion; conclusory allegations will not suffice. *See Rodgers v. Lincoln Towing Serv.,*

*Inc*., 771 F.2d 194, 201 (7th Cir.1985); *Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1352 (7th Cir.1985); *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir.1982).

D. PERSONAL INVOLVEMENT.

The defendants argue that the plaintiff cannot establish that Defendants Walker or Griffin were personally involved in any of the allegations in the plaintiff's complaint. "(A) defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established in order for liability to arise under 42 U.S.C. §1983." *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). In addition, the doctrine of *respondeat superior* (supervisor liability) does not apply. *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). "(A) supervising prison official cannot incur §1983 liability unless that officer is shown to be personally responsible for a deprivation of a constitutional right." *Vance v Peters,* 97 F.3d 987, 992 (7th Cir. 1996).

In his deposition, the plaintiff admits that Defendant Griffin did not have any involvement in his claims. (Def. Mot., Ex A, p. 41-42)**.** The plaintiff says Defendant Walker knew about his safety concerns involving Inmate Capshaw because the plaintiff wrote letters to him and because Walker signed off on his grievance.

To survive summary judgment, the plaintiff "needed to offer some record evidence that because of the purported letters, the defendant officials knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Vance v. Peters*, 97 F.3d 987, 994 (7th Cir.1996). The fact that the plaintiff sent a letter or letters to Director Walker is not sufficient to create a genuine issue of material fact regarding this defendant.. *See Vance*, 97 F.3d at 993. In fact, there is no evidence that Defendant Walker actually read the plaintiff's communications or had any awareness of the plaintiff's concerns. To the contrary, there is evidence that Defendant Walker does not review inmate correspondence relating to grievances; that task is delegated to subordinates. Therefore, the plaintiff has not demonstrated that Defendant Walker personally facilitated, approved, condoned, or turned a blind eye to the plaintiff's situation. *Id.*

The court also finds the plaintiff has also failed to establish any official capacity claims against Defendants Walker and Jones. The plaintiff alleged that the supervisors had failed to properly train or supervise officer. However, if none of the individual defendants inflicted a constitutional injury, the supervisor cannot be held liable on a failure to train theory. *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986). The motion for summary judgement on any claims against Defendants Walker, Jones or Griffin is granted.

**IT IS THEREFORE ORDERED that:**

    **1.**    **The defendants' motion for summary judgment is granted. [d/e 81] The clerk of the court is directed to enter judgment in favor of the defendants and**

        against the plaintiff pursuant to Fed. R. Civ. P. 56.  This case is terminated, with the parties to bear their own costs.

2. If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)(C).  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).

3. The agency having custody of the Plaintiff is directed to remit the docketing fee of $350.00 from the plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $350.00.

4. The plaintiff is responsible for ensuring the $350.00 filing fee is paid to the clerk of the court even though his case has been dismissed.  Release from incarceration does not relieve the plaintiff of her obligation to pay the filing fee in full.  The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.

5. The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.

Entered this 16th day of February, 2010.

                                s\Harold A. Baker

                              _____
                                HAROLD A. BAKER
                          UNITED STATES DISTRICT JUDGE